## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS (EASTERN DIVISION)

TS Merchandising Ltd., a British Virgin Islands
corporation, and TS Production LLC, a Hungarian
limited liability company,

                Plaintiffs,                     Case No.  07 C 6518

          vs.                          (Assigned to The Hon. Ronald A. Guzman)

Dan and Loretta Hollings, Arizona residents, and
Web Services, LLC, an Arizona limited liability
company,

                Defendants.

## DEFENDANTS' MOTION TO DISMISS FOR LACK
## OF PERSONAL JURISDICTION AND MEMORANDUM OF LAW IN SUPPORT

COME NOW Dan and Loretta Hollings, and WebServices, LLC, by way of special appearance without waiving any defenses relating to jurisdiction, through their counsel of record, and move this Court, pursuant to Fed. R. Civ. Proc. 12(b)(2), for the entry of an Order dismissing this case for lack of personal jurisdiction.  In support of this motion, Defendants state as follows:

I.       STATEMENT OF FACTS

The instant action has been filed against three nonresidents of this judicial district, none of whom have sufficient contacts with the State of Illinois to confer personal jurisdiction herein. Indeed, in their Complaint, Plaintiffs do not even allege that Defendants Loretta Hollings or WebServices have had <u>any</u> contacts with the State of Illinois.  Furthermore, Defendant Dan Hollings' contacts with Illinois, even as alleged in the Complaint, consist solely of limited email and telephone correspondence and a single visit to Chicago that was made at the demand of the Plaintiffs near the end of their business relationship.  Each of these limited contacts was for the purpose of discussing The Secret website and its operations. (Complaint ¶ 8-9).  These limited contacts were made pursuant to the explicit directions and requirements of Bob Rainone, CEO of Plaintiffs.  Furthermore, the claims within this lawsuit arise more specifically from allegations

relating to a different website, www.know-more-secrets.com (the "Know More Website"), and do not relate to The Secret website or its operations.

The contacts of each of the three defendants with the State of Illinois are set forth more specifically below. These contacts are insufficient to confer personal jurisdiction over these Defendants. Defendants respectfully request that the Court dismiss the instant action against each defendant for lack of personal jurisdiction.

      a.   <u>Loretta Hollings' Lack of Contacts with Illinois.</u>

Loretta Hollings is a resident of Arizona and has been since 1999. Affidavit of Loretta Hollings, attached hereto as Exhibit A, ¶3. In fact, Ms. Hollings has not been to Illinois in 6 years. *Id.* at ¶11. Ms. Hollings does not own, use or possess any property in Illinois. *Id.* at ¶4. She is not liable for income or property tax in Illinois, nor does she maintain any bank accounts in the State of Illinois. *Id.* at ¶¶5-6. Ms. Hollings does not maintain an office or telephone number in Illinois and is not registered to vote in Illinois. *Id.* at ¶¶7-8. Furthermore, Ms. Hollings has never had <u>any</u> contact with the Plaintiffs, Rhonda Byrne, Bob Rainone, or The Secret, LLC in Illinois or any other location. *Id.* at ¶10. Plaintiffs have not asserted that Ms. Hollings has any contacts whatsoever with the State of Illinois. Rather, they have added her as a defendant to the instant lawsuit solely because she is married to Mr. Hollings and Arizona, unlike Illinois, is a community property state.

      b.   <u>Dan Hollings' Limited Contacts with Illinois.</u>

Defendant Dan Hollings is a resident of Arizona. Affidavit of Dan Hollings, attached hereto as Exhibit B, ¶3. In 2005, Mr. Hollings began negotiations with Rhonda Byrne to create and maintain a website for her project, The Secret ("The Secret Website"). *Id.* at ¶¶9-10. Ms. Byrne represented that she was in the course of producing a movie called The Secret and solicited Mr. Hollings' help in designing and setting up the website and overseeing internet activities such as customer support, fulfillment and programming for The Secret's website.[1] *Id.* at ¶11. All of the negotiations and agreements surrounding the work that Mr. Hollings' performed on The Secret Website were between Mr. Hollings and Rhonda Byrne as well as her

---

[1] Mr. Hollings did not have a contractual relationship, nor was he engaged by The Secret. Rather, his work was negotiated with and performed for Rhonda Byrne and Prime Time Products. *See* Exhibit B, ¶16.

company Prime Time Products. *Id*. at ¶10.  At all times during the negotiation of his work on The Secret, Mr. Hollings was in Arizona and Ms. Byrne was in <u>Australia or California</u>. *Id*. at ¶12.  At no time in his negotiations with Ms. Byrne or her companies was there a reference or requirement that the relationship would have any contacts with the State of Illinois.

All of the work that Mr. Hollings performed associated with The Secret website was performed from his home in Arizona, the same place where he was first contacted by Ms. Byrne and her Company. *Id*. at ¶13.  In late 2005, without the knowledge or consent of Defendants, Ms. Byrne and/or Prime Time Products hired Bob Rainone to act as CEO for The Secret. *Id*. at ¶14.  Mr. Rainone apparently lives in Illinois. *Id*.  Following Mr. Rainone's retention as CEO and well after Mr. Hollings had begun performing services on behalf of Ms. Byrne and Prime Time, The Secret established offices in Illinois. *Id*. at ¶14.  By the time The Secret had established offices Illinois, Mr. Hollings had already been retained and had already begun work on The Secret website in Arizona. *Id*. at ¶¶13, 15.  After Mr. Rainone was hired, he instructed Mr. Hollings to redirect his monthly invoices for his work to The Secret at its offices in Illinois, which Mr. Hollings did per his instructions. *Id*. at ¶17.  Mr. Hollings never initiated any working relationship with Mr. Rainone or any employees of The Secret's Illinois office. *Id*. at ¶18.  The fact that Mr. Hollings corresponded and sent invoices to Illinois was due to the unilateral decision of Ms. Byrne and Prime Time Products to subsequently establish offices in Illinois.[2] *Id*.

With respect to his ongoing work for Ms. Byrne, Mr. Hollings' communications were conducted from his Arizona residence and occurred primarily by electronic means, including emails and telephone calls that included other parties in various parts of the world. *Id*. at ¶¶12-13, 18.  Approximately one month prior to his termination from The Secret, LLC, Mr. Hollings was required to attend a one-day meeting at the Chicago O'Hare International Airport in Chicago, Illinois. *Id*. at ¶20.  This meeting was the only occasion in which Mr. Hollings traveled to Illinois for anything associated with The Secret. *Id*.  In fact, this was the only time Mr. Hollings has visited Illinois in the past six years. *Id*. at ¶21.  Mr. Hollings has never visited The Secret's Illinois office. *Id*. at ¶19.

---

[2] Upon information and belief, Ms. Byrne now resides in California.

Mr. Hollings does not own, use or possess any property in Illinois. *Id*. at ¶4. Mr. Hollings is not liable for income or property tax in Illinois and does not maintain any bank accounts in Illinois. *Id*. at ¶¶5-6. Mr. Hollings does not maintain an office or telephone number in Illinois and is not registered to vote in Illinois. *Id*. at ¶¶7-8. The website at issue in this litigation, www.know-more-secrets.com (the "Know More Website") was designed and launched from Mr. Hollings' home in Arizona. *Id*. at ¶22. Further, any URLs, domain names or website addresses which Mr. Hollings registered were registered from Mr. Hollings' home in Arizona. *Id*. at ¶23.

c.  WebServices' Contacts with Illinois.

As with Loretta Hollings, Plaintiffs have failed to even allege that WebServices has any contacts with Illinois so as to confer jurisdiction in this Court. To the contrary, WebServices was incorporated in the State of Arizona and has its principle place of business in Tucson, Arizona. WebServices does not own, rent or maintain an office in Illinois. Affidavit of Dan Hollings as Managing Member of WebServices, LLC, attached hereto as Exhibit C, ¶4. WebServices does not own, rent or maintain an office in Illinois and does not maintain any bank accounts in Illinois. *Id*. at ¶¶8-9. WebServices does not have any employees in Illinois. *Id*. at ¶10. WebServices does not conduct or solicit any business in Illinois and does not derive substantial revenue from within the State of Illinois. *Id*. at ¶¶11-12. WebServices does not send marketing materials to Illinois. *Id*. at ¶13. WebServices, has not entered into any contract in Illinois with the Plaintiffs, Rhonda Byrne, Bob Rainone or The Secret, LLC. *Id*. at ¶14. In fact, WebServices' sole contact with Illinois were invoices which were submitted for services performed on The Secret Website pursuant to the express instructions from Bob Rainone and which do not give rise to the claims alleged in this lawsuit. *Id*. at ¶6.

II.  ARGUMENT AND AUTHORITY

a.  **Dismissal is proper because the Court lacks Personal Jurisdiction over each of the named Defendants.**

i.  The Standard for Dismissal Based Upon Lack of Personal Jurisdiction.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that jurisdiction over the defendant is proper. See *RAR, Inc. v. Turner Diesel, Ltd*., 107 F.3d 1272, 1276 (7th Cir. 1997); *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559 (2006). The court, in deciding such a motion, may receive and consider

affidavits from both parties.  See **Nelson by Carson v. Park Industries, Inc**., 717 F.2d 1120, 1123 (7th Cir. 1983); **Kennelsource, Inc. v. Barking Hound Vill.**, LLC, 2006 U.S. Dist. LEXIS 65455 (D. Ill. 2006). Conflicts between the parties' affidavits will be resolved in favor of the plaintiff for purposes of establishing a *prima facie* case of personal jurisdiction over a non-resident defendant. **Kalata v. Healy**, 312 Ill. App. 3d 761, 728 N.E.2d 648 (2000).  Each defendant's contacts with the forum state must be assessed individually. See **Keeton v. Hustler Magazine, Inc**., 465 U.S. 770, 781 n.13 (1984).  **Kennelsource, Inc.**, 2006 U.S. Dist. LEXIS 65455.

Defendants in this case have asserted subject matter jurisdiction based on both diversity of citizenship and federal question grounds.[3]  A federal district court sitting in diversity in Illinois has jurisdiction over a non-consenting, non-resident defendant if an Illinois state court would have jurisdiction. See **McIlwee v. ADM Indus., Inc.,** 17 F.3d 222, 223 (7th Cir. 1994); **Daniel J. Hartwig Assoc., Inc., v. Kanner**, 913 F.2d 1213, 1216 (7th Cir. 1990). Pursuant to the Illinois long-arm jurisdictional statute, personal jurisdiction extends to the limit allowed under the due process clauses of the United States <u>and</u> Illinois constitutions. **Dehmlow v. Austin Fireworks**, 963 F.2d 941, 945 (7th Cir. 1992); **Wilson v. Humphreys (Cayman) Ltd.**, 916 F.2d 1239, 1243 (7th Cir. 1990).  Courts sitting in diversity in Illinois have made it clear that they cannot look solely to federal due process principals.  "The Illinois constitution constrains its own separate and independent guarantee of due process, which also must be satisfied for a court to have jurisdiction over a defendant."  **Glass v. Kemper Corporation**, 930 F. Supp. 332 (1996).

---

[3] Defendants submit that Plaintiffs have failed to properly plead the grounds necessary for diversity of citizenship jurisdiction because they have not pled any of the requirements necessary for diversity jurisdiction, namely citizenship or the amount in controversy. **Held v. Held**, 137 F.3d 998, 1000 (7th Cir. 1998); **Jeffries v. Silvercup Bakers, Inc.**, 434 F.2d 310, 311 (7th Cir. 1970).  "Mere incantation of a federal statute does not confer jurisdiction".  **Rendina v. Falco,** 2006 U.S. Dist. LEXIS 67100 (2006).  However, because Plaintiffs have also pled federal question jurisdiction, Defendants move for dismissal based on Plaintiffs' failure to meet this broader standard.

Therefore, a court sitting in diversity would need to analyze whether jurisdiction violated due process provided by either the federal constitution or the Illinois constitution.

In a federal question case, the inquiry is whether haling defendants into court in Illinois accords with principles of due process under the federal constitution. See ***United States v. De Ortiz***, 910 F.2d 376, 381-82 (7th Cir. 1990). Because a federal court sitting in federal question jurisdiction is not constrained by the Illinois constitution, a federal question case provides a broader reach of jurisdiction for the court. As Plaintiffs have attempted to invoke both federal question and diversity jurisdiction in this case, Defendants will address the broader test for jurisdiction: whether exercise of personal jurisdiction over the Defendants would offend due process under the federal constitution. To the extent that Plaintiff cannot exercise personal jurisdiction under the federal question analysis, it follows that jurisdiction would not be found in the more limited analysis available in a diversity case.

Defendants respectfully submit that the exercise of personal jurisdiction over any of the three Defendants in this case would offend due process and, as such, request that this matter be dismissed for lack of personal jurisdiction.

ii. Federal Due Process

"Due process measures the limits of personal jurisdiction by the strength of the relationship between the defendant and the forum state." ***Glass***, 930 F. Supp. at 338. Federal due process requires that the defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" ***International Shoe Co. v. Washington***, 326 U.S. 310, 316 (1945). Courts have typically considered the due process analysis as a two-part inquiry: do minimum contacts exist, and if so, does the exercise of personal jurisdiction comport with traditional notions of fair play and substantial justice? ***Glass,*** 930 F. Supp. at 338. Under the federal due process clause, jurisdiction is only proper when the defendant has sufficient contacts with the forum state such that he has "'fair warning' that based on his conduct and connection with the state, he reasonably should anticipate being sued there." ***Zeidler v. A&W Restaurants, Inc.*** 2004 U.S. Dist. LEXIS 9352, *3 (N.D. Ill 2004) (citing ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462 (1985)).

Minimum contacts are those acts by which the defendant has "purposefully availed [himself] of the privilege of conducting activities within the forum," ***Hanson v. Denckla***, 357 U.S. 235, 253 (1958), such that he should "reasonably anticipate being haled into court there."

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Subject to the limits of due process, a court may exercise two types of personal jurisdiction over an out-of-state defendant: general and specific. *Glass*, 930 F. Supp. at 338.

## 1. Specific Jurisdiction

Specific jurisdiction arises only when the claims asserted within the litigation arise from the defendant's contacts with the forum state. *Wilson v. Humphreys (Cayman), Ltd.,* 916 F.2d 1239, 1243 (7th Cir. 1990). For the court to find that it has specific jurisdiction over any of the Defendants, that Defendants' contacts with the forum <u>must be related</u> to Plaintiffs' claims. Further, a court must "focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 780 (7th Cir. 2003) (citing *World-Wide Volkswagen*, 444 U.S. at 292, and *International Shoe*, 326 U.S. at 316-17.)

The court must consider "foreseeability" by the defendant meaning whether or not "the defendant could have anticipated being haled into the courts of the state with respect to the matter at issue." *Purdue Research Found*., 338 F.3d at 780. In assessing such forseeability it is the <u>defendant's</u> conduct that is pertinent because "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id.* It must be established that the "defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Id*.; *Griffith v. Wood Bros*., 2004 U.S. Dist. LEXIS 21606 (D. Ill. 2004). The only matters of consequence in assessing whether a court may exercise jurisdiction over a non-resident defendant are the actions (if any) which the non-resident defendant has taken in the forum state. *Zeidler v. A&W Restaurants*, 2004 U.S. Dist. LEXIS 9352 (2004).

## 2. General Jurisdiction

If the Court does not have specific jurisdiction over the Defendants, it must find that the non-resident defendant has such continuous, systematic and substantial contacts so as to confer general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, (1984). The contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities." *International Shoe*, 326 U.S. at 318. This is a high standard requiring a great amount of contact with the forum state at the initiation of the defendant. *Glass v. Kemper Corp.,* 930 F. Supp. 332,

338 (D. Ill. 1996). For this Court properly to exercise general jurisdiction over Defendants, their contacts with Illinois must be continuous, systematic, and substantial. See *Helicopteros*, 466 U.S. at 416; *International Shoe*, 326 U.S. at 318; *Glass,* 930 F. Supp. at 338.

It is necessary for the court to weigh the contacts of each defendant individually. *Hustler Magazine, Inc*., 465 U.S. at 781 n.13; *Kennelsource, Inc.*, 2006 U.S. Dist. LEXIS 65455. In performing this analysis, it is clear that none of the Defendants have purposefully availed themselves of an Illinois forum sufficiently to allow for the exercise of personal jurisdiction.

   iii. The Court lacks personal jurisdiction over each of the three named defendants.

     1. The Court lacks personal jurisdiction over Loretta Hollings.

The Affidavit of Loretta Hollings, together with the allegations contained within the Complaint, demonstrate that Loretta Hollings does not have sufficient contacts with Illinois such that this Court can exercise personal jurisdiction, either general or specific, over Ms. Hollings. First and foremost, the Complaint does not allege a single claim against Ms. Hollings. Rather, Ms. Hollings is named as a Defendant "only to the extent that she has an interest in the marital community". (Complaint ¶ 4). Because the Complaint does not allege any claims against Ms. Hollings, it would be impossible for the Court to have specific jurisdiction over Ms. Hollings as she cannot have any contacts with Illinois which relate to the claims asserted in the complaint. Therefore, in order for the Court to have personal jurisdiction over Ms. Hollings, she must have sufficient contacts to grant the Court general jurisdiction over her. Ms. Hollings' Affidavit, together with the Complaint, make it abundantly clear that Ms. Hollings does not have contacts with Illinois sufficient to confer jurisdiction.

Ms. Hollings does not own, use or possess personal property in Illinois. Exhibit A, ¶4. Ms. Hollings is a citizen and resident of the State of Arizona and has been since 1999. *Id*. at ¶3. Ms. Hollings has not even visited the State of Illinois in the past six (6) years. *Id*. at ¶11. Ms. Hollings does not pay income or property taxes in the State of Illinois, does not maintain a bank account in the State of Illinois, does not have an office or telephone number in the State of Illinois and is not registered to vote in the State of Illinois. *Id*. at ¶¶5-8. Ms. Hollings simply does not have any contacts with the State of Illinois. This fact is made even clearer by the fact that Plaintiffs have completely failed to make any allegations of contacts by Ms. Hollings with

Illinois within their complaint.  Indeed, her name is completely absent from the section of the Complaint entitled "Jurisdiction and Venue".

The plaintiff bears the burden of making a prima facie showing that jurisdiction over the defendant is proper. See ***RAR, Inc. v. Turner Diesel, Ltd***., 107 F.3d 1272, 1276 (7th Cir. 1997). With regard to Ms. Hollings, the Plaintiffs have failed to assert even a single contact with Illinois which would establish personal jurisdiction over her.  As such, Plaintiffs have failed to meet their burden.  The testimony set forth in Ms. Hollings' Affidavit demonstrates that she does not have sufficient contacts with Illinois to confer jurisdiction.

2.  The Court lacks personal jurisdiction over Dan Hollings.

Mr. Hollings does not have sufficient contacts with Illinois to allow the exercise personal jurisdiction over him by this Court.  Plaintiffs have alleged that personal jurisdiction over Mr. Hollings rests on telephone and email communications which occurred during his 17-month engagement "to discuss The Secret website and related issues" and one visit which Mr. Hollings made in December, 2006, at the request of The Secret, to "discuss website operations". (Complaint, ¶8).

a.  The Court does not have general jurisdiction over Dan Hollings.

Mr. Hollings email and telephone conversations with TS Merchandising employees, together with his lone visit to Chicago in December, 2006 are not sufficient to grant this Court general jurisdiction over Mr. Hollings.  According to the United States Supreme Court and district courts within this circuit,  "[g]eneral jurisdiction arises when the nonresident defendant has continuous and systematic general business contacts with the forum state".  ***Glass v. Kemper Corporation***, 930 F. Supp. 332 (1996) (citing ***Hanson v. Denckla,*** 357 U.S. 235 (1958)).  "This is a fairly high standard requiring a great amount of contacts".  ***Glass***, 930 F. Supp. at 338.  For this court to exercise general jurisdiction over Mr. Hollings, Mr. Hollings' contacts with Illinois must be continuous, systematic and substantial. ***Id.***

In ***Glass,*** 930 F. Supp at 336, the Court found a lack of personal jurisdiction over a nonresident defendant who had substantially more contacts with the State of Illinois than Mr. Hollings.  In ***Glass***, the nonresident defendant was employed by a company which had its headquarters in Illinois.  The defendant interviewed for his position at the company's office in Chicago, attended orientation in Chicago at the start of his employment, made seven trips to

Chicago attend board meetings during his employment with the Plaintiff, engaged in telephone conversations and written communications with people at the headquarters in Chicago and even maintained a banking relationship with First Chicago, based in Chicago, where he maintained his checking account, money market and IRA.  (**Id.** at 336-337).

In finding that the court <u>lacked</u> personal jurisdiction, the Court specifically analyzed whether there were sufficient contacts to establish general jurisdiction over the defendant.  The court in Glass found that the defendant's contacts with Illinois were too sporadic, tenuous, and insubstantial to warrant exercising jurisdiction over him for matters unrelated to his contacts with the state. **Id.** at 339.  In fact the court noted that the defendant's "lack of contacts overwhelm[ed] his few contacts with the state" because he did not live in Illinois, own real property in Illinois, maintain an office or telephone number in Illinois, vote in Illinois and did not pay income taxes in Illinois.  **Id.**

Applying the court's reasoning in **Glass** to the instant case results in the inescapable conclusion that the court lacks personal jurisdiction over Mr. Hollings.  Similar to **Glass**, Mr. Hollings has participated in telephone and written correspondence with a home office in Chicago.  *See* Exhibit B, ¶18.  However, unlike in **Glass**, Mr. Hollings did not negotiate or interview at a Chicago office.  *Id*. at ¶12.  All of his negotiations in entering the working arrangement on The Secret Website were done from his Arizona home and were directed to Ms. Byrne in Australia.  *Id*. at ¶¶9-13.  Further, the defendant in **Glass** attended seven (7) meetings at the defendant's Chicago headquarters whereas Mr. Hollings only attended one meeting at the Chicago O'Hare airport.  *Id*. at ¶¶20-21.  Further, the defendant in **Glass** maintained an ongoing relationship with a Chicago bank.  Mr. Hollings has no such contacts.  *Id*. at ¶6.

It is well-settled by Illinois Federal Courts that electronic and written communications sent into Illinois are alone not enough to establish personal jurisdiction over a non-resident defendant. **Brooks v. Belkins Van Lines, LLC**, 2006 U.S. Dist. LEXIS 88652 (N.D. Ill. 2006) (citations omitted).  Other federal courts have found a lack of jurisdiction over nonresident defendants based upon much greater contacts with forums than Mr. Hollings has with Illinois. *See, e.g., **Helicopteros**,* 466 U.S. at 411, (no general jurisdiction where nonresident defendant negotiated contract in forum; purchased 80 percent of its helicopter fleet, spare parts, and accessories from company in forum state; sent pilots to forum state for  training and to bring helicopters to South America, sent management and maintenance personnel to forum state for

"plant familiarization" and technical consultation; and received over $ 5 million in payments drawn upon bank in forum state); *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir. 1990) (no general jurisdiction where defendant advertised in forum state; mailed brochures and paid commissions to travel agents in forum state; and sold vacation cruises to residents of forum state); *Obermeyer v. Gilliland,* 873 F. Supp. 153, 157-58 (C.D. Ill. 1995) (no general jurisdiction in Illinois where defendant truck driver, as his only route, regularly drove truck from Michigan to Illinois and was en route to Illinois when accident occurred in Michigan).

As stated in Plaintiffs' complaint, Mr. Hollings' limited contacts with Illinois consist of telephone and email correspondence with The Secret's Illinois office, which occurred as a result of Ms. Byrne and Prime Time Product's subsequent unilateral decision to set up an office in Illinois, and one business meeting at the Chicago Airport which Mr. Hollings was required to attend. Mr. Hollings' contacts are not continuous, systematic and substantial and, as such, he is not subject to general jurisdiction in this court.

> b.  The Court does not have specific jurisdiction over Mr. Hollings.

Specific jurisdiction arises only when the defendant's contacts with the forum are related to the controversy underlying the litigation. *Wilson*, 916 F.2d at 1244. In analyzing personal jurisdiction a court must "focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation." *Purdue Research Found. v. Sanofi-Synthelabo, S.A*., 338 F.3d 773, 780 (7th Cir. 2003) (citing *World-Wide Volkswagen,* 444 U.S. at 292, and *International Shoe*, 326 U.S. at 316-17). The court must consider "foreseeability" by the defendant meaning whether or not "the defendant could have anticipated being haled into the courts of the state with respect to the matter at issue." *Purdue Research Fund*, 338 F.3d at 780. In assessing such forseeability it is the <u>defendant's</u> conduct that is pertinent because "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id; Zeidler v. A&W Restaurants*, 2004 U.S. Dist. LEXIS 9352 (2004). It must be established that the "defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Id*.; *Griffith v. Wood Bros*., 2004 U.S. Dist. LEXIS 21606 (D. Ill. 2004). The court in the present case does not have personal jurisdiction over Mr. Hollings for two reasons. First, Mr. Hollings' few contacts with the State of Illinois do not relate to the claims within this litigation. Second, Mr. Hollings

very limited contacts with Illinois were made only pursuant to direct instructions from Bob Rainone and not of his own purposeful availment.

Plaintiffs' complaint alleges that Mr. Hollings had contacts with Illinois through email, telephone and the single business meeting to discuss The Secret website operations. (Complaint, ¶ 8).  None of the claims within the Complaint, however, arise out of The Secret website or its operations.   Rather, Plaintiffs have asserted claims against Mr. Hollings for trademark infringement, unfair competition and cybersquatting arising out of Mr. Hollings creation of the website www.know-more-secrets.com (the "Know More Website"), a website which, according to Plaintiffs' own complaint, was launched <u>after</u> Defendant Hollings' alleged engagement on The Secret Website had terminated.  Further, as demonstrated by Mr. Hollings' affidavit, the Know More Website was created in Arizona from his home.  Exhibit B, ¶22.  In addition, any websites, URLs, or domain names which Mr. Hollings created, were also created out of his Arizona home.  *Id*. at ¶23.  Mr. Hollings' sole (and limited) contacts with Illinois[4] were to discuss The Secret Website and its operations.  As none of the claims within Plaintiffs' complaint arise out of The Secret Website or its operations, Plaintiffs have failed to establish personal jurisdiction over Mr. Hollings.

Furthermore, none of the contacts listed in Plaintiffs' complaint were the result of Mr. Hollings' purposeful contact with Illinois.  To the contrary, Mr. Hollings negotiated and contracted with Ms. Byrne and her company, Prime Time Products, while Mr. Hollings and Ms. Byrne were in Arizona and Australia respectively.   *Id*. at ¶¶10-12.   The terms of their relationship was defined through these dealings.  Further, Mr. Hollings' originally submitted his invoices to Prime Time Products and received payment from Prime Time Products.  *Id*. at ¶16.  All of the negotiations and agreements surrounding the work that he performed on The Secret website were between him and Rhonda Byrne as well as her company Prime Time Products.  *Id*.

Mr. Hollings performed all of his work associated with The Secret website from his home in Arizona.  *Id*. at ¶13.  It was only sometime after Mr. Hollings had been engaged and begun

---

[4] Mr. Hollings contacts relating to The Secret website were not directed to Illinois, but were in response to the initial inquiries and discussions with Ms. Byrne in Australia and California. Exhibit B, ¶¶9-13.

receiving payment, that Ms. Byrne unilaterally decided to hire Bob Rainone in Illinois and establish an office in Illinois for The Secret. *Id*. at ¶¶14, 18.  At that point, Ms. Byrne began including Mr. Rainone on correspondence and instructed Mr. Hollings to do the same.  Further, Mr. Rainone and Ms. Byrne directed Mr. Hollings to begin submitting his invoices and correspondence to the Illinois office. *Id*. at ¶¶17-18.

   Mr. Hollings is not subject to specific jurisdiction in Illinois because none of his minimal contacts with the state, even as stated in Plaintiff's Complaint, were either purposeful or related to the claims in the Complaint.  Rather, the claims in the complaint arise solely out of alleged conduct that took place in Arizona.  Further, the contacts set forth in the complaint were made solely under the direction and instructions of Plaintiff, their CEO and Ms. Byrne. As such, Mr. Hollings is not subject to personal jurisdiction in Illinois.

### 3.  The Court lacks personal jurisdiction over WebServices.

   As with the other defendants, this Court lacks personal jurisdiction over Defendant WebServices because WebServices does not have sufficient contacts with the State of Illinois. WebServices is an Arizona corporation wholly owned by Dan Hollings with its sole place of business in Arizona.  Exhibit C, ¶¶3-4.  WebServices was established by Mr. Hollings per the instructions of Bob Rainone, well after Mr. Hollings had been engaged by Ms. Byrne to prepare The Secret's website, in order to receive Mr. Hollings' payments for his services. *Id*. at ¶5. WebServices does not solicit business in Illinois and does not receive material revenue from Illinois. *Id*. at ¶¶11-12.  WebServices does not own, rent or maintain an office in Illinois, or hold any bank accounts in Illinois. *Id*. at ¶¶8-9.  WebServices does not have any employees in Illinois. *Id*. at ¶10.  WebServices does not send marketing materials to Illinois. *Id*. at ¶13. WebServices has not entered into any contract in Illinois with the Plaintiffs, Rhonda Byrne, Bob Rainone, or The Secret, LLC. *Id*. at ¶14.  Furthermore, WebServices' lack of contacts with the State of Illinois is demonstrated by the fact that Plaintiffs have failed to make any allegations within their complaint regarding WebServices' contacts with Illinois sufficient to confer jurisdiction.

   In order to have personal jurisdiction over WebServices, Plaintiff must show either that WebServices' contacts with Illinois are sufficiently continuous and systematic so as to confer general jurisdiction or that WebServices has contacts with Illinois and that the claims in this lawsuit arose out of said contacts.  Plaintiff cannot make that showing.  In fact, Plaintiff has

failed to raise <u>any</u> allegations regarding WebServices alleged contacts with Illinois. As with Loretta Hollings, WebServices is not even mentioned in the portion of the Complaint entitled "Jurisdiction and Venue". However, as demonstrated by the Affidavit submitted herewith, WebServices only contacts with Illinois are the invoices which were submitted pursuant to instructions from Plaintiffs for services performed on The Secret Website. *Id*. at ¶6. As the invoices were submitted pursuant to Plaintiff's instructions, these contacts should not be considered "purposeful" so as to confer jurisdiction.

Further, the only allegations asserted by Plaintiffs against WebServices are claims based upon the creation of the Know More Website, not The Secret's Website. It is undisputed that the Know More Website was created following the termination of Mr. Hollings relationship with Ms. Byrne, Prime Time Products or The Secret and was established in Mr. Hollings' home in Arizona. Exhibit B, ¶22. As such, WebServices has no contacts with Illinois relating to the claims alleged in the Complaint.

III.     CONCLUSION

Based upon the foregoing, the Court must dismiss the instant lawsuit. None of the Defendants have sufficient contacts with Illinois so as to confer personal jurisdiction under due process standards. Plaintiffs have failed to even allege that Defendants Loretta Hollings or WebServices have contacts with Illinois that would convey personal jurisdiction over them. With respect to Dan Hollings, Plaintiffs have alleged that Mr. Hollings' contacts with Illinois consist solely of emails, telephone calls and a single visit for a purpose unrelated to the alleged misconduct described in the Complaint. None of these contacts are related to the instant litigation, which arises from an entirely separate website admittedly formed after Mr. Hollings' engagement on The Secret Website had ended. Moreover, none of Mr. Hollings' prior contacts were made in a manner that could constitute his purposeful availment of an Illinois forum.

Federal courts have found a lack of personal jurisdiction in cases where the Defendants had far greater contacts with the forum state than these Defendants. The exercise of personal jurisdiction in this case would offend due process and, as such, Defendants request that the court dismiss the instant action.

WHEREFORE, for all of the foregoing reasons, Defendants, Dan Hollings, Loretta Hollings and WebServices, LLC, respectfully request that this Court enter an Order dismissing this case for lack of personal jurisdiction.

Dated: February 6, 2008

Respectfully submitted,

Dan Hollings, Loretta Hollings and
WebServices, LLC

By: <u>s/Robert B. Groholski</u>
Robert B. Groholski
Illinois State Bar No. 6272317
Schwartz Cooper Chartered
180 North LaSalle Street
Suite 2700
Chicago, IL 60601
-and-
Christopher E. Parker *(admitted pro hac vice)*
Georgia Bar No. 512152
Jessica B. Couch *(admitted pro hac vice)*
Georgia Bar No. 141275
Mozley, Finlayson & Loggins LLP
One Premier Plaza, Suite 900
5605 Glenridge Drive
Atlanta, Georgia   30342

*Counsel for Defendants*