# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# (EASTERN DIVISION)

| | |
|---|---|
| TS Merchandising Ltd., a British Virgin Islands corporation, and TS Production LLC, a Hungarian limited liability company,<br><br>    Plaintiffs,<br><br> vs.<br><br>Dan and Loretta Hollings, Arizona residents, and Web Services, LLC, an Arizona limited liability company,<br><br>    Defendants. | Case No. 07 C 6518<br><br>Hon. Ronald A. Guzman |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

In response to defendants' motion to dismiss for lack of jurisdiction (Dkt. No. 21), plaintiffs hereby oppose the motion and request that it be denied in its entirety.

## PRELIMINARY STATEMENT

This Court has jurisdiction over defendants and this case. Plaintiffs' claims for relief arise directly from the Internet consulting and Website management services Dan Hollings ("Hollings") and his company, Web Services, LLC ("Web Services"), provided to the plaintiffs and their predecessors. In connection with those services, Hollings and Web Services issued at least 16 monthly invoices directly to an address in Chicago, Illinois, and for each invoice, they received payment in the form of a check identifying the payor as a resident of Chicago. Furthermore, Hollings made dozens of phone calls to persons and phone numbers in the Chicago area, and he even traveled to Chicago, all as part of the services he had been engaged to – and did – provide. Finally, Hollings at all times acted for the benefit of his wife Loretta Hollings

("Mrs. Hollings") and their marital community, which according to relevant law, subjects her to the jurisdiction of this court.

As described more fully below, the defendants' actions created every reasonable expectation that they might be haled into this District to address disputes arising from the services they provided to the plaintiffs here. Accordingly, jurisdiction is proper, and the motion to be dismiss should be denied.

## STATEMENT OF FACTS

TS Merchandising ("TSM") operates a Website in connection with *The Secret*, a film that has been viewed by millions around the world and has also been released as a book with more than seven million copies in print. [Compl. ¶¶ 7, 12].

TSM operates its Website out of its principal place of business in Chicago, Illinois. [Compl. ¶ 7]. Hollings was engaged to perform Website management and Internet consulting services for *The Secret* Website in or around September or October 2005, and he continued to provide those services through February 2007. [Compl. ¶ 7; Dan Hollings Deposition ("Hollings Dep.") 12:13-14:7, attached hereto as Exhibit 1].

In the course of his 17-month engagement, Hollings continuously interacted and communicated with TSM employees located in Chicago, Illinois to discuss *The Secret* Website and related issues. [Compl. ¶ 8]. Indeed, during that period, Hollings made and received dozens of telephone calls to and from TSM representatives located in Chicago, Illinois, including Bob Rainone, a TSM executive and an executive with The Secret LLC. [Compl. ¶ 8; Hollings Dep. 53:17-54:8) Declaration of Bob Rainone ("Rainone Decl.") ¶¶ 2, 4, attached hereto as Exhibit 2]. Hollings also regularly sent emails to TSM representatives in Chicago, Illinois. [Compl. ¶ 8; Hollings Dep. 17:15-18:13; Rainone Decl. ¶ 5]. Furthermore, in connection with the services he was engaged to provide, Hollings traveled to Chicago, Illinois in December 2006 to meet with

TSM employees and others to discuss his engagement and Website operations going forward. [Compl. ¶ 8; Hollings Dep. 62:16-63:3; Rainone Decl. ¶ 6].

Each month, Hollings prepared and sent invoices for his work on *The Secret* Website to Chicago, Illinois, and he included the Chicago, Illinois address of the entity he was invoicing on every invoice he prepared. [Compl. ¶ 9; Hollings Dep. 22:1-23; 23:11-24; 24:20-24; 26:3-10; 27:13-22; 28:3-11; 30:24-32:7; 32:24-33:21; 34:2-35:18; 42:14-43:10]. Some invoices Hollings drafted also requested reimbursement of amounts Hollings paid to outside vendors for services directly related to the Internet marketing and consulting services Hollings had been engaged to provide. [Hollings Dep. 24:20-25:17; 26:3-23]. Hollings received payment in the form of a check for each of the invoices he sent; each check – and the 1099 forms summarizing the payments made to him or his company Web Services – came from Chicago, Illinois and bore the Chicago, Illinois address of the entity paying his invoices. [Hollings Dep. 35:19-37:25; 39:20-40:22; Rainone Decl. ¶ 8].

The services Hollings provided to the plaintiffs between September or October 2005 and February 2007 constituted his "livelihood" and the primary source of income for him and his wife, both of whom are Arizona residents. [Hollings Dep. 58:23-60:5; Loretta Hollings Deposition ("L. Hollings Dep.") 11:5-15, attached hereto as Exhibit 3]. Mr. and Mrs. Hollings used that income to pay their joint obligations, including home mortgage payments, utility bills, car insurance and the like [Hollings Dep. 59:9-60:5]. Hollings' income during his service to the plaintiffs and their predecessors was effectively the sole source of income for Mrs. Hollings individually and for the Hollings' martial community. [Hollings Dep. 59:9-60:5; L. Hollings Dep. 11:5-15].

On November 16, 2007, the plaintiffs sued Hollings, Web Services, and Loretta Hollings in this Court, alleging, among other things, that while he was providing services to the plaintiffs, Hollings violated a fiduciary duty to them by securing unauthorized commissions from vendors of products related to *The Secret*. [Compl. ¶¶ 24-26]. The plaintiffs also seek declaratory judgment of a dispute between the parties concerning the sufficiency of the compensation paid to Hollings and Web Services for his services. [Compl. ¶¶ 39-41, 73-76].

## **ARGUMENT**

### I. UNDER THE APPROPRIATE LEGAL STANDARD, THIS COURT HAS PERSONAL JURISDICTION OVER THESE DEFENDANTS.

The Court has personal jurisdiction over the defendants if an Illinois court has jurisdiction. *See* Fed.R.Civ.P. 4(k)(l)(A). The Illinois long-arm statue provides that any non-resident defendant submits to the jurisdiction of the Illinois courts as to any cause of action arising from the doing of any of the enumerated acts in the statute. 735 ILCS 5/2-209(a). Included among these acts is "[t]he making or performance of any contract or promise substantially connected with this State." 735 ILCS 5/2-209(a)(7). The Illinois long-arm statute also has a catch-all provision. Under Section 2-209(c), "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c).

Here, this Court has personal jurisdiction over these defendants on at least two grounds. First, defendants are subject to Section 2-209(a)(7), which provides jurisdiction for the "making ***or performance of*** any contract or promise substantially connected with this State." *See* 735 ILCS 5/2-209(a)(7) (emphasis added). Second, defendants are subject to jurisdiction under Illinois' long-arm statute, Section 2-209(c).

A court is permitted to exercise jurisdiction when the defendant has had "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The required "minimum contacts" with a forum differ depending on the type of personal jurisdiction being asserted, general or specific. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 nn. 8-9 (1984). Specific jurisdiction can exist if a defendant has "purposefully directed" its activities at a forum state and the plaintiff's claims for relief directly "aris[e] out of or relat[e]" to these same activities. *Helicopteros*, 466 U.S. at 414 n.8; *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). As described more fully below, the defendants are subject to specific jurisdiction in this case.

    **A.**    **This Court Has Specific Jurisdiction over Hollings and Web Services.**

Here, it is undisputed that in or around September or October 2005, Hollings was engaged to perform Web management and Internet marketing services in connection with the film *The Secret* and its related goods and services. [Compl. ¶ 7; Hollings Dep. 12:13-14:7]. Indeed, since at least October 2005, Mr. Hollings began sending monthly invoices for his services to Chicago, Illinois. [Hollings Dep. 22:24-23:2]. Even after he created Web Services to be the official entity through which he would offer his services to the plaintiffs, Hollings continued to draft the invoices himself, he always included a Chicago address for the entity he was billing, and he sent these invoices to Chicago. [Hollings Dep. 35:7-18; 42:5-43-4].

Furthermore, plaintiffs and their affiliates paid Hollings and Web Services from Illinois for each of the invoices Hollings issued. [Hollings Dep. 35:19-21]. With the exception of the first payment, the plaintiffs made each payment to Hollings or Web Services by a check which prominently displayed the Chicago address of the payor. [Hollings Dep. 35:22-38:25; Rainone

Decl. ¶ 8, Ex. A]. In addition, federal 1099 forms Hollings and Web Services received summarizing the payments made to them also showed the Chicago address of the payor. [Hollings Dep. 40:1-42:19; Rainone Decl. ¶ 8, Ex. A].

In addition, from September 2005 through February 2007, Hollings often made and received phone calls to and from multiple Chicago-based telephone numbers, including, for example to TS Merchandising executive Bob Rainone. [Hollings Dep. 53:17-54:8; Rainone Decl. ¶ 4]. Hollings made and received these calls to and from the Chicago area to consult with and receive guidance and direction from Rainone regarding the functionality of Web sites associated with *The Secret*, which Hollings was engaged to help support. [Rainone Decl. ¶ 4].

Also, as part of his responsibilities, and on behalf of the Chicago entities paying his invoices, Hollings frequently contacted Internet services such as Google to alert them about possible copyright infringement of the *The Secret* movie, and in doing so, he always identified the owner of the copyright (and by extension, the entity he was working for) as having a Chicago address. [Hollings Dep. 54:9-57:25].

Finally, as part of the engagement at issue, Hollings attended a meeting in Chicago in December 2006 to discuss "[f]uture plans of where *The Secret* would be going in the coming year, what they would be doing," and he traveled to Chicago even though "[t]here was nothing covered in the meeting that couldn't have been done by telephone or email." [Hollings Dep. 62:16-63:24; 64:6-21; Rainone Decl. ¶ 6].

As alleged in the complaint, the parties now dispute, among other things, whether the amounts Hollings and Web Services received from Chicago-based companies were sufficient for the services they provided. [Compl. ¶¶ 73-76]. In addition, the plaintiffs have alleged that Hollings breached a fiduciary duty by using his working relationship with the plaintiffs to secure

undisclosed and unauthorized commissions from potential vendors of the plaintiffs' products. (Compl. ¶¶ 23-25). The dispute, therefore, is directly related to the "performance of [a] contract or promise substantially connected with this State," namely, the services Hollings had been engaged to provide for the benefit of *The Secret*, and jurisdiction is appropriate. 735 ILCS 5/2-209(a)(7). *See Gordon v. Vitalis Partners, LLC*, No. 07C6807, 2008 U.S. Dist. LEXIS 12044, at *8-11 (N.D. Ill. Feb. 20, 2008) (motion to dismiss for lack of personal jurisdiction denied where defendants "performed individualized services for a substantial amount of money for a known Illinois client"); *Czarnowski Display Servs., Inc. v. Bell*, No. 03C5782, 2004 U.S. Dist. LEXIS 13441, at *10 (N.D. Ill. July 15, 2004) (personal jurisdiction appropriate over California defendant who performed his work from California, but received his paychecks every two weeks from corporate office in Chicago and visited Chicago occasionally for work).

      The defendants' motion to dismiss makes much of the notion that Hollings sent his invoices and made his phone calls and trip to Chicago at the plaintiffs' direction. [*See* Motion at 3]. Thus, according to the defendants, their contacts with Illinois were based solely on the "unilateral activity" of Mr. Rainone, suggesting that Hollings' contacts do not satisfy the "purposeful availment" requirement articulated in *Burger King*. 471 U.S. 462, 475 (1985). But the defendants fail to acknowledge that the Supreme Court rejected the same argument when it was made by the *Burger King* defendants. There, the defendants were Michigan residents who breached a franchise agreement with Burger King. Burger King sued them in Florida, where Burger King obliged the defendants to send their franchise agreement payments. According to the Court, this circumstance differed from the case in *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), where the only tie between the out-of-state defendant and the forum state resulted from a customer's decision to drive there, i.e., the "unilateral activity" of

another party or third person. *Burger King*, 471 U.S. at 475-76. Instead, the Burger King franchisees had a relationship involving "continuing and wide-reaching contacts with Burger King in Florida" including "long-term and exacting regulation of his business from Burger King's Miami headquarters…." *Id.* at 480.

Likewise here, nothing in this case arose from the "unilateral activity" of the plaintiffs or a third party. On the contrary, Hollings engaged in seventeen months of "continuing" contacts with the plaintiffs' representatives in Chicago, including taking direction by email and phone from Chicago regarding the services he was providing for *The Secret*, traveling to Chicago to consult with the plaintiffs' representatives, sending monthly invoices to them in Chicago, and receiving monthly payment from Chicago. And it is irrelevant that Hollings provided most of his services from Arizona:

> It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476. Wherever his home office was, over a seventeen-month period Hollings systematically directed his activities to the Chicago-based plaintiffs; he certainly derived substantial monetary benefit from them. *See id.* at 474 (*citing Kulko v. California Superior Ct.*, 436 U.S. 84, 96 (1978) ("[W]here individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities. . . ."). In any event, his contacts far surpass the "minimal contacts" required for the exercise of jurisdiction in this case.

**B.**　　**Because Hollings' Illinois Conduct Was Undertaken for the Benefit of His Marital Community, Jurisdiction over Mrs. Hollings Is Also Appropriate**.

The plaintiffs have not alleged that Loretta Hollings had any direct dealings with the plaintiffs in Illinois. Rather, because Mr. and Mrs. Hollings are residents of Arizona, a community property state, the plaintiffs seek to hold Mrs. Hollings liable solely as a member of the marital community between her and her husband, Mr. Hollings.

"Where a party seeks to join a spouse based on membership in the marital community, the court must consider the issue of agency in light of the legal status given to the community itself under the applicable community property laws." *Essex Eng'g Co. v Credit Vending, Inc.*, 732 F. Supp. 311, 315 (D. Conn. 1990). In *Essex Engineering*, defendant Merrill, an Arizona resident, created the corporate defendant Credit Vending, Inc. to conduct business that was intended to benefit the marital community he shared with his wife, who was also named as a defendant. *Id.* Acknowledging that Arizona is a community property state, the court denied Mrs. Merrill's motion to dismiss for lack of personal jurisdiction. The court held: "Mr. Merrill's conduct and presence within the forum state, undertaken as the agent of and for the benefit of the community, and for Mrs. Merrill by force of the law of Arizona, is sufficient to ensure that the exercise of personal jurisdiction over Mrs. Merrill does not offend traditional notions of fair play and substantial justice." *Id.* at 315.

According to Hollings and Mrs. Hollings, everything Hollings did in connection with the services he provided to *The Secret* were ultimately for the benefit of his family. [Hollings Dep. 58:23-59:15]. It was his "livelihood." [Hollings Dep. 58:23-59:2]. In fact, the payments Hollings received for the services he rendered for *The Secret* over seventeen months were deposited into bank accounts the Hollings control jointly [Hollings Dep. 46:16-47:13]. These

funds were used to pay many bills for which Mr. Hollings and Mrs. Hollings are jointly responsible, including:

- their home mortgage [Hollings Dep. 9:18-24; 59:19-23];

- car insurance for two cars, jointly titled [Hollings Dep. 10:2-11; L. Hollings Dep. 10:10-18];

- phone bills, including phone numbers used by Hollings to provide his services to *The Secret* [Hollings Dep. 59:9-25; L. Hollings Dep. 9:23-10:5].

Indeed, Mrs. Hollings testified that Mr. Hollings' income constituted "99%" of the income stated on their joint tax returns, and that virtually all of the money in her individual bank account comes from money her husband earns through his Web management and internet marketing services. (L. Hollings Dep. 11:8-15)

Thus, the marital community shared by Mr. and Mrs. Hollings was thoroughly implicated in the Illinois activities engaged in by Mr. Hollings.  By virtue of her membership in the marital community, Mrs. Hollings literally had everything to gain by the activities Mr. Hollings directed to Illinois.  Accordingly, jurisdiction over her is proper.  *See Barer v. Goldberg*, 582 P.2d 868, 872 (1978) ("[T]he critical question to be answered is whether the *community* had sufficient contact with the [forum state] in connection with this transaction so that the primary plaintiffs . . . could have maintained their action against the [defendants] in this state by aid of the long-arm statute.  We think the answer must be yes.")

## **CONCLUSION**

For the reasons set forth above, the plaintiffs respectfully request that the defendants' motion to dismiss for lack of personal jurisdiction be denied in its entirety.

Dated: May 14, 2008

Respectfully submitted,
TS MERCHANDISING LTD. and TS PRODUCTION LLC

By: ___s/Christopher I. Cedillo
        One of Their Attorneys

Brian A. Cabianca
Teresita T. Mercado
Christopher I. Cedillo
SQUIRE, SANDERS & DEMPSEY LLP
Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004-4498
Telephone:   (602) 528-4000
Facsimile:    (602) 253-8129
-and-
Jessica E. DeMonte
Squire, Sanders & Dempsey LLP
Three First National Plaza
70 W. Madison, Suite 2015
Chicago, IL 60602
Telephone:    (312) 781-1123

*Attorneys for TS Merchandising Ltd.
and TS Production LLC*

I hereby certify that on May 14, 2008, I electronically transmitted the attached document to the Clerk's office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

  Christopher E. Parker
  Jessica B. Couch
  Mozley, Finlayson & Loggins LLP
  One Premier Plaza, Suite 900
  5605 Glenridge Drive
  Atlanta, Georgia   30342
  -and-
  Robert B. Groholski
  Schwartz Cooper Chartered
  180 North LaSalle Street, Suite 2700
  Chicago, IL 60601
  Attorneys for Dan and Loretta Hollings and Web Services, LLC

**COPY** of the foregoing and Notice of Electronic Filing
hand-delivered on May 14, 2008, to:

Honorable Ronald A. Guzman
United States District Court
Everett McKinley Dirksen Building
219 S. Dearborn Street, Room 1278
Chicago, IL 60604

By: _s/Rosalin Sanhadja_