## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS (EASTERN DIVISION)

| | |
|---|---|
| TS Merchandising Ltd., a British Virgin Islands corporation, and TS Production LLC, a Hungarian limited liability company, | Case No.  07 C 6518 |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| vs. | (Assigned to the Hon. Ronald A. Guzman) |
| Dan and Loretta Hollings, Arizona residents, and Web Services, LLC, an Arizona limited liability company, | |
| Defendants. | |

COME NOW Dan and Loretta Hollings, and Web Services, LLC, by way of special appearance without waiving any defenses relating to jurisdiction, through their counsel of record, and file their Reply in Support of their Motion to Dismiss for Lack of Personal Jurisdiction.

I.      STATEMENT OF FACTS

Defendants incorporate their statement of facts as included in their original memorandum of law herein.  Those facts, as well as the testimony of Rhonda Byrne, the "creator" of *The Secret* empire, confirm that this matter should be dismissed. Significantly, in opposing Defendants' motion to dismiss, Plaintiffs focus only on the contacts purportedly relating to Mr. Hollings' actions taken with respect to his performance of internet marketing services performed on behalf of *The Secret* from his Arizona home. In their Complaint, Plaintiffs' assert a variety of claims through seven (7) counts, at least five (5) of which have no direct relationship to the agreement to pay Mr. Hollings for his services (which Plaintiff's breached). Plaintiffs raise no arguments concerning these other claims and apparently are in agreement that personal jurisdiction over Defendants would not exist for their claims for trademark infringement and dilution (Counts I and IV), unfair competition (Counts II and III), and cybersquatting (Count V). Instead, Plaintiffs try to hale Defendants, a husband and wife living in Southern Arizona, into a federal court halfway across the country to litigate a multitude of spurious claims based on jurisdictional tactics and contacts of Plaintiffs' sole creation.

Defendants do not have the "minimum contacts" or "purposeful availment" necessary to confer jurisdiction under the constraints provided by the due process clauses of the United States and Illinois Constitutions.  On the contrary, the relationship at issue in this case was negotiated and entered into between individuals domiciled in Arizona, Australia and California and performed entirely in Arizona. The contacts upon which Plaintiffs attempt to confer jurisdiction consist solely of 16 invoices which were later e-mailed to Chicago pursuant to instructions from Plaintiffs and Rhonda Byrne, e-mails and telephone calls between Dan Hollings and a "Chicago-based telephone number", and one visit to Chicago by Dan Hollings required by Plaintiffs shortly before terminating the relationship.  The only contact asserted against WebServices is the submission of a few invoices in the very late stages in the relationship.  Further, none of these insufficient contacts involved Defendant Loretta Hollings.  These contacts, individually or collectively, are insufficient to confer personal jurisdiction over these Defendants. Defendants respectfully request that the Court dismiss the instant action against each defendant for lack of personal jurisdiction.

II.    ARGUMENT AND AUTHORITY

a. **Dismissal is proper because the Court lacks Personal Jurisdiction over the named Defendants.**

i. <u>**The Standard for Dismissal Based Upon Lack of Personal Jurisdiction.**</u>

It is undisputed that general jurisdiction does not exist in this case with respect to any of the Defendants.  Therefore, the only question is whether the Plaintiffs can show sufficient contacts so as to establish specific jurisdiction over each Defendant. On a motion to dismiss for lack of personal jurisdiction, <u>the plaintiff bears the burden</u> of establishing that the proper court has been chosen. See ***RAR, Inc. v. Turner Diesel, Ltd***., 107 F.3d 1272, 1276 (7th Cir. 1997); ***Roiser v. Cascade Mountain, Inc.***, 367 Ill. App. 3d 559 (2006).  A defendant is subject to specific jurisdiction only when it is determined that he "purposefully established minimum contacts with the forum state". ***AIT Worldwide Logistics, Inc. v. Ramp Logic, Inc***., 2004 U.S. Dist. LEXIS 6196 (N.D. Il 2004)(citing ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462 (1985)). It is the <u>defendant's</u> conduct which is considered in assessing jurisdiction.  ***Rohde v. Central R.R***., 930 F. Supp. 1269, 1271 (N.D. Ill. 1996).  In determining whether a defendant has sufficient minimum contacts with Illinois, courts should consider whether the defendant could reasonably anticipate being hauled into court in Illinois. ***Id***. "An out-of-state party's contract

with an in state party is alone not enough to establish the minimum contacts." *Id*. (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997).

Plaintiffs have attempted to create jurisdiction in this case based on three insufficient types of contacts by Mr. Hollings.  First, some of the exchange of invoices to and payments made on behalf of *The* Secret which were redirected to Illinois <u>after</u> formation of the underlying agreement and at the sole direction of Plaintiffs; second, e-mails and occasional phone calls made or <u>received</u> between Dan Hollings and what has now been characterized as a "Chicago based" telephone number, and; third a single visit made by Dan Hollings to Chicago at the direction of Plaintiffs late in the contractual relationship.  As further discussed below, none of these contacts is sufficient to confer or permit jurisdiction under the limitations imposed by the due process clauses of the Illinois and United States Constitution.

### ii.  <u>The electronic invoices and receipt of payments are insufficient to confer jurisdiction as to Dan Hollings or WebServices.</u>

Plaintiffs have alleged that jurisdiction against Dan Hollings and WebServices should rest on the fact that Dan Hollings emailed 16[1] invoices to Bob Rainone in Illinois during the course of his work with The Secret and the fact that Mr. Hollings received checks from The Secret's Illinois office.[2]  Plaintiffs' allegation is contrary to applicable case law dealing with this issue.  First, courts considering this issue consistently hold that the mere exchange of invoices and payments between the forum state and non-resident defendant is <u>insufficient</u> to confer jurisdiction.  This is especially true in cases like the present where the performance of the contract does not take place within the forum state.  See e.g. *AIT Worldwide Logistics, Inc. v. Ramp Logic, Inc*., 2004 U.S. Dist. LEXIS 6196, *5 (N.D. IL 2004).  Further, the present

---

[1] WebServices was not formed until September, 2006. The LLC was created at the suggestion of Plaintiff's COO, Bob Rainone in an effort assist Mr. Hollings with the anticipated huge influx of cash resulting from his services rendered to *The* Secret. (D. Hollings Depo. 43:23-44:5) As such, the majority of invoices were submitted by Mr. Hollings himself and not by WebServcies.

[2] It is undisputed that the initial invoice Mr. Hollings submitted for his services was sent to Ms. Byrne in Australia and paid from her business account in Australia. (D. Hollings Depo. pp. 21:14-16, 35:22-36:10)

exchange of invoices and payment is even less significant in the relationship at issue because the invoices were directed to Illinois <u>at the direction of the Plaintiffs</u> and not at the unilateral discretion or purposeful action of any Defendant.  Plaintiffs have not provided any citation to any case in which personal jurisdiction has been premised on such an insignificant and non-purposeful act by a defendant.

Courts have been clear that the submission of payments and invoices to Illinois is <u>not</u> sufficient to confer jurisdiction.  In the case of ***AIT Worldwide Logistics,*** 2004 U.S. Dist. LEXIS 6196 at *5, the plaintiff Illinois corporation alleged that the defendant, a California corporation, solicited its services through a telephone call to the Illinois office and that all negotiations, correspondence and telephone conversations conducted in furtherance of the contractual relationship took place between the Illinois and California office.  Further, it was alleged that all of the invoices and payments related to the contract were sent by mail between Illinois and California.  However, no services related to the contract were performed in Illinois. ***Id.*** The court in ***AIT*** held that the contacts were <u>insufficient</u> to confer jurisdiction, emphasizing the fact that none of the actual performance of the contract was to take place in Illinois.

The ***AIT*** case is remarkably similar to the present case as both evidence circumstances where the performance of the contract was not to take place in Illinois.  However, the present contacts are even less significant than those in ***AIT***.  None of the Defendants solicited a relationship with The Secret or its Illinois office.  On the contrary, it is clear from the testimony elicited thus far in the case that Rhonda Byrne solicited Mr. Hollings' involvement.  (Byrne Depo. p. 51:13-15; 27:23-28:6; 33:21-14; Affidavit Dan Hollings ¶ 10). **At that time, she was in either Australia or California and Mr. Hollings was in Arizona**. (Affidavit Dan Hollings ¶ 11; Byrne Depo. ¶ 33:21-34:2).  It was not until <u>after</u> the terms of their contractual relationship had been defined, and until after Mr. Hollings had already begun performing services and submitting invoices, that he was directed to send future invoices to Chicago. (D. Hollings Depo. 17:14-19; 21:14-19; 24:8-11).

Even in cases where the Defendant chooses to send invoices or payments to the forum state, jurisdiction does not lie.  Indeed, in the instant case, where the invoices were <u>redirected pursuant to instructions from Plaintiffs,</u> resting jurisdiction on them would clearly offend due process.  Plaintiffs' contention that Defendants should be subject to jurisdiction because they received and deposited checks from the Illinois office is unjust.  Mr. Hollings original dealings

and negotiations did not contemplate, much less require, receipt of payment or any benefit or involvement from Illinois.   Rather, his initial payment received was a wire transfer from Australia. (D. Hollings Depo. p. 35:22-36:10). Plaintiffs subsequently unilaterally decided to redirect Mr. Hollings invoices to Illinois. They did not at any time advise Mr. Hollings that by doing so he was consenting to be haled into an Illinois court if Plaintiffs chose to sue him rather than pay him what he was due under the agreement. Plaintiffs' actions cannot confer jurisdiction on Defendants. As this Court has previously held,   "[P]erformance of contractual obligations by the plaintiff, not the defendant, in the forum state . . . . is not sufficient, by itself, to confer jurisdiction over an out-of-state defendant, at least when the contract does not require the plaintiff to perform in the forum state." *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.,* 597 F.2d 596, 601 (7th Cir. 1979). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). *Giacobbe v. Speiser, Krause, Nolan & Granito*, 2006 U.S. Dist. LEXIS 63525 (N.D Ill. 2006)(Guzman, J.)

Courts have addressed and reconciled the impact of internet-based communications on notions of personal jurisdiction and have reinforced the proper focus of the inquiry on the reasonable expectations of the parties at the time the relationship commenced.  "Not surprisingly, circuits that have addressed the effect the maintenance of an interactive website has on general personal jurisdiction have not embraced the concept that the mere advent of the internet has virtually nationalized all litigation." *Underwriters Labs., Inc. v. Hydrofilm L.P.*, 2006 U.S. Dist. LEXIS 63543, 18-21 (N.D. Ill. Aug. 23,2006) (Guzman, J.) (emphasis supplied).

The *AIT Worldwide* decision is also consistent with decisions of other courts considering personal jurisdiction. There are no such contacts in this case. See *The Kroger Company v. Malease Foods Corp*., 437 F.3d 506 (6th Cir. 2006)  ("The mailing of invoices and making calls, without more, do not rise to the level of minimum contacts"); *Phoenix Engineering and Supply, Inc. v. Amelco, Inc.*, 1994 U.S. Dist. LEXIS 3042 (D. NJ 1994)("Plaintiff's unilateral activities-placing defendant's name on the invoices and requesting direct payment—simply do not suffice to generate the requisite contacts to establish jurisdiction. Defendant's mere mailing of payments is not enough for jurisdiction."); *Sowards v. Switch Energy Co. Inc,* 744 F. Supp. 1399 (W.D. Va. 1990)("If the incidental act of mailing invoices into the forum state rises to the level of

"purposefully availing", little would remain of the safeguard of personal liberty from jurisdictional abuse the due process clause affords.") Simply put, the exchange of invoices and payments between a non-resident defendant and a forum state is **not** sufficient to confer jurisdiction. The submission of invoices is the only contact cited by Plaintiffs between WebServices and Illinois. In the present case where Dan Hollings was instructed to re-direct his invoices to Illinois by the Plaintiffs after the formation of the contract between himself and Ms. Byrne, resting jurisdiction on the invoices would truly offend constitutional due process protections.

### iii.  The email and telephone conversations between Bob Rainone and Dan Hollings are insufficient to confer jurisdiction.

Plaintiffs have alleged that jurisdiction is proper because Mr. Hollings "made and received phone calls to and from multiple Chicago-based telephone numbers" and because of e-mail correspondence between Mr. Hollings and Mr. Rainone. This is insufficient to confer jurisdiction. First, the receipt of emails and telephone calls by a defendant, by its nature, is not the purposeful action of the defendant and is irrelevant in assessing jurisdiction. Second, Plaintiffs' usage of the term "Chicago-based" telephone numbers is insufficient as it does not clearly indicate that the recipient of the calls was actually in Illinois. Further, Plaintiffs have made no attempt to show the frequency of the telephone calls but state only that "dozens" of calls were made or received over the course of more than a year. This equates to potentially one to two calls per month, all of which may have been made to individuals outside of Illinois.

In his deposition, Mr. Hollings testified about his correspondence with Mr. Rainone as follows:

> A:    Couple months after I came on board, Bob Rainone joined the company and, at that point, I shared with him the products and services that I had already introduced to Rhonda and Paul.
> Q:    How did you share those with him? And I guess I should be clearer.  I mean by what medium did you share those? Did you speak to him in person, did you send an email?
> A:    Primarily e-mail.

(D. Hollings Depo. p. 17:14-18:7)

> Q:    Did you ever phone Bob?
> A:    Occasionally.
> Q:    Do you know what his phone number is?
> A:    By memory, no.

(D. Hollings Depo. p. 18:14-17)

> Q:      Do you know where Bob Rainone was when you sent emails to him?
> A:      I'm not sure. It varied.

(D. Hollings Depo. p. 19:6-8)

According to numerous Illinois cases, "making telephone calls and mailing payments into the forum state are insufficient bases for jurisdiction". *Id.* at *5 (citing *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.* 18 F.3d 389 (7th Cir. 1994); See also A*bbot Laboratories, Inc. v. Biovalve Technologies, Inc.*, 2008 U.S. Dist. LEXIS 10362 (N. D. Il. 2008)("Isolated telephone and email communications, alone, may not be a basis for asserting personal jurisdiction over a defendant"). *Brainerd v. Balish*, 164 Ill. App. 3d 836, 115 Ill. Dec. 792, 518 N.E.2d 317 (1 Dist. 1987) ("Absent any other connection to Illinois, the exchange of mail or telephone calls between a plaintiff in Illinois and a nonresident defendant is insufficient to support the assertion of personal jurisdiction.")

In *American Stair Corp. v. Renata Constr. Co.*, 625 F. Supp. 136 (N.D. Ill. 1985) the court held that an exchange of phone calls and correspondence was insufficient to support jurisdiction over defendant New York corporation.   The buyer in *American Stair* was a Delaware corporation with its principal place of business in Illinois. The seller was a New York corporation with its principal place of business in New York. In response to a national publication, the buyer submitted a proposal to deliver a stairway. The seller accepted. The seller cancelled the agreement, and the buyer filed suit in Illinois, alleging breach of contract and willful and wanton misconduct. The seller sought, and the court granted, dismissal for want of personal jurisdiction. *Id.* at 141.   The court held that the buyer failed to establish jurisdiction under the Illinois long-arm statute. The buyer initiated the contract by submitting the bid proposal and nearly all the subsequent contacts between the parties. The seller's only contacts with Illinois involved telephone calls, which the court held were insufficient under the facts for personal jurisdiction.

In the present case, Mr. Hollings emails and telephone calls are insufficient to confer jurisdiction in Illinois.   First and foremost, they commenced <u>following</u> the negotiation and entrance into the contractual relationship. Ms. Byrne unequivocally testified that the reltionship with Mr. Hollings was confirmed by her through an e-mail sent by her (in Australia) to Mr.

Hollings (in Arizona) on September 24, 2005 -- before Mr. Rainone was hired and before the time frame contemplated by his affidavit testimony. (Byrne Depo. 47:21-48:22, Ex. 1-2). Mr. Hollings was uncertain as to where, physically, the later e-mail correspondence to and from Mr. Rainone was directed as Mr. Rainone's location varied.  Further, telephone conversations were "occasional" and, according to Plaintiffs' own response, often initiated by Mr. Rainone, not Dan Hollings.  The fact that Mr. Rainone was retained following Mr. Hollings and that Mr. Hollings was thereafter, required to engage in incidental telephone and e-mail correspondence with Mr. Rainone was not enough to render it foreseeable that Mr. Hollings would be haled into court in Illinois and does not satisfy due process protections afforded by the U.S. and Illinois constitutions.

### iv.   The sole visit by Dan Hollings to Chicago at the direction of Bob Rainone is insufficient to confer jurisdiction.

Mr. Hollings December, 2006 visit to Illinois is not enough to confer jurisdiction.  In order to be a basis for jurisdiction, presence in the forum state must not be "incidental" to the contract but rather, must be "significant in the formation of the contract and defendant's efforts to have it satisfactorily performed". *Wisconsin Electrical Mfg. Co. v. Pennant Products, Inc.*, 619 F.2d 676, 678 (7th Cir. 1980); *Abbot Laboratories*, 2008 U.S. Dist. LEXIS 10362 at * 26.  Plaintiffs contend that a single trip to Illinois by Dan Hollings shortly before his termination should give rise to jurisdiction.

In their brief, Plaintiffs blindly state that it is somehow "irrelevant" that the contract services were performed in Arizona.  Plaintiffs' argument is incorrect and directly contrary to Illinois case law stating that the place of performance of the contract is a relevant consideration in determining whether jurisdiction exists.  *AIT Worldwide*, 2004 U.S. Dist. LEXIS 6196 at *5 (finding lack of jurisdiction where "no services were performed in Illinois"); *Stericycle, Inc. v. Sanford*, 2002 U.S. Dist LEXIS 24541 (N.D. Ill. 2002) (finding lack of jurisdiction where "the contract required no performance in Illinois").  In support of their contention that out of state performance is irrelevant, Plaintiffs cite to *Burger King, supra*.  *Burger King*, however, did NOT hold that out of state performance is irrelevant.  Rather, *Burger King* held that it is possible to have jurisdiction against a nonresident without physical presence IF other sufficient contacts by the defendant are "purposefully directed" to the forum state. *Id.* at 476.  The Court further noted that physical presence would "enhance a potential defendant's affiliation with a state and

reinforce the reasonable forseeability", clearly indicating that physical presence in the performance of the contract, or lack thereof, is directly relevant to evaluating jurisdictional contacts. ***Id.***

In addition to the fact that almost every material aspect of the services at issue in this case were performed outside of Illinois (and <u>all</u> of the alleged activity relating to a majority of the counts pled in the Complaint), Mr. Hollings' sole contact with the state was not due to his purposeful availmentas part of entering into the contractual relationship but, rather, was conducted only at the insistence of Plaintiffs shortly before Mr. Hollings services were terminated.   When questioned regarding the visit in his deposition, Mr. Hollings testified as follows:

> Q:      What about your work for The Secret brought you there?
> A:      Bob Rainone had requested I come for a meeting there that he was orchestrating.

(D. Hollings Depo. 62:22-25)

> Q:      Why did you need to be there?
> A:      You would have to ask Bob Rainone that.

(D. Hollings Depo 63:4-5).

> Q:      Why did you go?
> A:      Because I was providing services for them as a client and expected to continue to provide services and Bob said that we would be talking about things that we would be doing this coming year, so it behooved me to accept his invitation.

(D. Hollings Depo 63:8-13)

> Q:      Did you object when Bob told you that you need to come to Chicago for this meeting as distinguished from somewhere else?
> A:      Actually, I did, yes.

(D. Hollings Depo 63:25-64:3).

Mr. Hollings' single visit to Chicago was conducted at the direction of Bob Rainone and not a "purposeful" contact with Illinois. Further, the visit occurred in December, 2006 at the very end of Mr. Hollings' engagement with Plaintiffs.  Therefore, it cannot be said that his visit was conducted in the formation of the contract.  Finally, as Mr. Hollings stated in his deposition

"there was nothing covered in the meeting that couldn't have been done by telephone or e-mail." (D. Hollings Depo. 64:16-18), evidencing the fact that the meeting was not significant in the performance of the contract. Instead, all facts point to the inescapable conclusion that the meeting was insignificant and likely part of a deliberate plan to improperly create the illusion of contacts that might require Mr. and Mrs. Hollings to defend a federal lawsuit in a far-away jurisdiction where they would be required to deplete their limited resources in defense of frivolous claims. Because the visit was late in the contract, conducted at the instructions of Plaintiffs, and was incidental to Mr. Hollings performance, the Court should find it insufficient to confer jurisdiction.

### v. The *Burger King* case does not provide support for Plaintiffs' position.

In plaintiffs' response in opposition to the instant motion, they argue that the United States Supreme Court decision in *Burger King* supports a finding of personal jurisdiction in this case. However the *Burger King* decision rested on exactly the type of contacts which do not exist in this case. In *Burger King*, the plaintiffs applied for a franchise agreement from Burger King, a Florida corporation. Prior to finalizing the contractual arrangement, the plaintiffs attended multiple management courses in Florida and purchased $165,000.00 worth of equipment from the company's Florida office. *Id.* at 466-467. The negotiations surrounding the contract occurred between the Florida office and Michigan. *Id.* at 467. Further, the contract documents themselves provided that the franchise relationship was established in Miami, governed by Florida law, and called for payment of all fees to the Florida office. *Id.* at 466. The court held that, the defendant "deliberately reached out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would drive from affiliation with a nationwide organization. Upon approval he entered into a carefully constructed 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King and Florida." *Id.* at 480. Because the defendant "deliberately engaged in significant activities with the state" and because the "actions by the defendant himself created a substantial connection with the state", jurisdiction was proper. *Id.* at 475-476.

None of the critical contacts present in *Burger King* are present in this case. Dan Hollings did not negotiate the terms of his agreement with an Illinois office. In fact, at the time of entering into this agreement, Mr. Hollings was entirely unaware of any link to Illinois and was negotiating solely with Ms. Byrne through her company Prime Time Products in Australia and

California. (Byrne Depo. p. 51:13-15; 27:23-28:6; 33:21-14). Further, there is no mention of Illinois in the contract documents and Mr. Hollings did not travel to Illinois at any time during the formation of the relationship.  As discussed above, his sole trip to Illinois was late in the relationship and incidental to its performance, and conducted solely at the instruction of plaintiffs, who shortly thereafter terminated the relationship and filed suit in Illinois.  The ***Burger King*** case contains far more extensive and purposeful contacts by the defendant with the forum state than are present in this case.  Because of these clear distinctions, ***Burger King*** does not compel Illinois jurisdiction over the Arizona residents named as Defendants in this case.

In addition to ***Burger King***, Plaintiffs mistakenly rely upon the case of ***Gordon v. Vitalis Partners, LLC***, 2008 U.S. Dist. LEXIS 12044, 8-10 (N.D. Ill. Feb. 20, 2008) in support of their contention that jurisdiction is appropriate over these Defendants.  However, ***Gordon*** involved an ongoing relationship, sought after by the Defendants, between themselves and a player for the Chicago Bulls.  The Plaintiff was a resident of Illinois when the Defendant approached him about financial services and investment opportunities.  As noted by the court, the defendants "were involved in every aspect of Gordon's financial dealings".  The contract terms clearly specified that the plaintiff and his companies in Illinois were the source of the money at issue in the litigation. Further, the defendant traveled to Chicago to meet with Gordon to discuss the investment opportunities.

Similarly, Plaintiffs rely upon the case of ***Czarnowski Display Services, Inc. v. Bell***, 2004 U.S. Dist. LEXIS 13441( N.D. IL 2004). The facts of the case are, however, readily distinguishable.  As in ***Gordon***, the defendant in ***Bell*** had much more significant contacts with Illinois than the Defendants in the instant case.  Bell was a California resident who sold his company to a known Illinois company, negotiated the contract with the Plaintiffs in Illinois, entered into a non-compete agreement, and continued working for the company in California. Bell traveled to Illinois at least six (6) times in performance of his employment.  Further, Bell breached his fiduciary duty with the company by using the company credit card to buy personal items for himself and his girlfriend, and used Company checks to pay off the bills. He then submitted expense reports to the corporate office in Chicago, Illinois and requested reimbursement for his personal use.

Neither ***Gordon*** nor ***Bell*** provide support to confer personal jurisdiction under the facts in this case.  In fact, each of these cases is illustrative by contract of the magnitude of the contacts

which are necessary to confer jurisdiction and which are not present in this case.    Unlike the present case, the defendants did not seek a contract with a known Illinois resident, travel to Illinois to discuss the terms of the contract or specify that contract funds would come from an Illinois source.  None of these contacts is present in the instant case. As such, neither **Gordon** nor **Bell** are particularly instructive to the instant dispute.

### vi.   <u>The contract was not negotiated, executed or performed in Illinois.</u>

In addition to the general "catch-all" provision in the Illinois long-arm statute conferring jurisdiction to the parameters of the U.S. and Illinois Constitution, Plaintiffs contend that jurisdiction is appropriate under a separate subsection which specifically provides for jurisdiction when the defendant engages in "the making or performance of any contract or promise substantially connected with the state".    The instant contract, however, was not made or performed in Illinois.  Further, the contract was not "substantially connected" to Illinois.  As such, Plaintiff's argument must fail.

The contract was not made or performed in Illinois.  As discussed above, the contract was negotiated by e-mail between Mr. Hollings in Arizona and Ms. Byrne in Australia and California, finalized by e-mail between these same states[3], and performed from Dan Hollings' residence in Arizona.  See **Torco Holdings, Inc. v. P&M Aircraft Co**., 140 F. Supp. 2d 889, 2001 U.S. Dist. LEXIS 690 (N.D. Ill. 2001) (The defendant California corporation was not subject to personal jurisdiction in Illinois since (1) the plaintiff Illinois corporation initiated contact with the defendant and did not contest that negotiations between the parties took place in California, (2) the contract at issue was signed in Illinois by the plaintiff and was ultimately executed in California, and (3) the defendant's services were performed in California.); See also **Real Colors, Inc. v. Patel**, 974 F. Supp. 645 (N.D. Ill. 1997) (In a breach of contract action, the federal court sitting in Illinois lacked personal jurisdiction over the defendants, North Carolina and India corporations, where: (1) the contacts were initiated by the plaintiff, an Illinois corporation, (2) the contract was negotiated in South Carolina, and (3) none of the substantial duties were performed in Illinois.)

---

[3] Notably, Ms. Byrne appeared to be conducting all business relating to *The Secret* from her established company in Australia.

Furthermore, the contract was not substantially connected with Illinois. Considering whether a contract was "substantially connected" to the forum state requires examination of the contract as a whole. See e.g. *Goldberg v. Miller*, 874 F. Supp. 874 (N.D. Ill. 1995). In this case, the only connection with Illinois was the ministerial connection established by Plaintiffs after the relationship was established. Prior to the creation of the Illinois office, Mr. Hollings submitted his invoices to Ms. Byrne and was paid from Australia. Indeed, Mr. Rainone, as acknowledged in his affidavit, had no apparent involvement in the Plaintiffs' businesses until after the relationship was established and Mr. Hollings had commenced the performance of his marketing services. Considering the totality of the contract, the fact that it was performed outside of Illinois, negotiated outside of Illinois and entered into outside of Illinois, the fact that Mr. Hollings was later directed and required to submit his invoices and receive payments from Illinois is not sufficient for the Court to determine that the contract was "substantially connected" to Illinois.

### iv.    Jurisdiction over Loretta Hollings is improper.

Plaintiffs seek to exercise personal jurisdiction over Mrs. Hollings because the Hollings are residents of Arizona, which is a community property state. Plaintiffs cite to only one case -- not an Arizona decision-- in support of the proposition that Mrs. Hollings had sufficient contacts with Illinois to be haled into court there. *Essex Eng'g Co. v. Credit Vending, Inc.*, 732 F. Supp. 311 (D. Conn. 1990). Plaintiffs fail to specifically discuss why a Connecticut district court case should bear precedent in Illinois. It is undisputed, however, Mrs. Hollings did not have minimum (or any) contacts with Illinois, nor could she have reasonably anticipated being haled into an Illinois court based on her limited knowledge of her husband's business practices. Plaintiffs' sole basis for jurisdiction over Ms. Hollings is her marriage to Dan Hollings. (L. Hollings Depo. 7:1-7:16).

If the court elects to view *Essex Engineering Company* as persuasive in Illinois (or Arizona), there are several distinctions that can be drawn between that case and the present situation. In *Essex Engineering Company*, the plaintiff was seeking to assert personal jurisdiction over the wife of Arizona resident for the purposes of reaching the community property of the husband's and wife's interest in the defendant company, 732 F. Supp. 311 (D. Conn. 1990). However the wife in Essex had substantial knowledge of the transactions at issue in the case both individually and as a director of the spouse's company. *Id.* at 315. As a director, she authorized her husband to purchase a controlling interest in the defendant company and enter

a stockholder's agreement. *Id.* at 312. Moreover, she was elected as a director of the defendant company, expressly adopted several resolutions and ratified all pre-incorporation acts including the negotiations to purchase the company. ***Id.*** She also admitted that she signed various corporate resolutions as a director and understood what she was signing after explanation where necessary. ***Id.***

In stark contrast to the spouse in *Essex Engineering Company*, Mrs. Hollings does not have any specific knowledge of the transactions at issue and did not participate in Mr. Hollings dealings with Plaintiffs. Mrs. Hollings has not acted in an official capacity with respect to Mr. Hollings' company at any time.

> Q. Are you a member of [your husband's] company?
> A. No.
> Q. Are you a director?
> A. No.
> Q. Have you ever been an employee of that company?
> A. No, I have not.

(L. Hollings Depo. 11:19-12:1).

> Q: Did you ever see any invoices that he might have issued for that?
> A:  No.
> Q. Did you ever see any checks that he might have received in payment for work for The Secret?
> A. No.
> Q. Did you ever deposit any checks that might have come in for his work on The Secret?
> A. No.

(L. Hollings Depo. 7:8-16).

> Q. And can you describe your knowledge of that work?
> A. I know that he was basically involved in marketing it or promoting it and that's about it.

(L. Hollings Depo. 7:1-4).

The ***Essex Engineering*** court also cited to ***Barer v. Goldberg***, 20 Wash. App. 472, 481 (1978), for the proposition that the wife is subject to personal jurisdiction for transactions entered into by the husband, "where she had knowledge of the transaction." ***Barer*** can also be distinguished from the present case because the ex-wife there owned property in the forum state and her ex-husband, the primary defendant, lived in the forum state. *Id.* at 478. Although the

14

ex-wife lived in California, she frequently visited close relatives in the forum state, Washington, and she had knowledge of the transaction at issue from the start because it was a loan from her parents to her then husband.  *Id.* at 479.  It can reasonably be inferred that the wife in ***Barer*** could have anticipated being haled into court in the forum state based on both her and her ex-husband's strong connections to the state and her knowledge of the original transaction. Here, Mrs. Hollings has not been to Illinois for over nine years and has no strong business or personal connection to the state, thus she could not have reasonably anticipated being haled into an Illinois court.  (L. Hollings Depo. 12:2-12:9)

Plaintiffs have failed to cite any case in which personal jurisdiction over a spouse was based on contacts as minimal and tenuous as those in this case.  Mrs. Hollings should not be subject to personal jurisdiction in Illinois because she has no real connection to the state and lacks knowledge about the transactions at issue.  Ms. Hollings has not even been to Illinois in 9 years.  She could not possibly have anticipated being haled into an Illinois court and should be dismissed as a defendant.

III.    CONCLUSION

For each of the reasons discussed above, the Court lacks personal jurisdiction over each of the Defendants.  The Defendants request that the Court enter an order dismissing this case in its entirety.

Respectfully submitted this 28th  day of May, 2008.

_/s/*Jessica B. Couch*_____
Robert B. Groholski
Illinois State Bar No. 6272317
Schwartz Cooper Chartered
180 North LaSalle Street
Suite 2700
Chicago, IL 60601
-and-
Christopher E. Parker *(admitted pro hac vice)*
Georgia Bar No. 512152
Jessica B. Couch *(admitted pro hac vice*)
Georgia Bar No. 141275
Mozley, Finlayson & Loggins LLP
One Premier Plaza, Suite 900
5605 Glenridge Drive
Atlanta, Georgia   30342

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS (EASTERN DIVISION)**

| | |
|---|---|
| TS Merchandising Ltd., a British Virgin Islands corporation, and TS Production LLC, a Hungarian limited liability company, | Case No.  07 C 6518 |
| | **CERTIFICATE OF SERVICE** |
| Plaintiffs, | (Assigned to the Hon. Ronald A. Guzman) |
| vs. | |
| Dan and Loretta Hollings, Arizona residents, and Web Services, LLC, an Arizona limited liability company, | |
| Defendants. | |

I hereby certify that on May 28, 2008 I electronically filed the aforementioned DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION  using the clerk's ECF System, which system will automatically notify the following counsel of record in this case.

Jessica E. DeMonte
   jdemonte@ssd.com
Squire, Sanders & Dempsey, LLP
Three First National Plaza
70 W. Madison, Suite 2015
Chicago, IL 60602
Telephone:     (312) 781-1123

Brian A. Cabianca
   bcabianca@ssd.com
Teresita T. Mercado
   tmercado@ssd.com
Christopher I. Cedillo
   ccedillo@ssd.com
Squire, Sanders & Dempsey LLP
Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004-4498

Respectfully submitted this 28th day of May, 2008.

_/s/ Jessica B. Couch_____
Jessica B. Couch
Georgia Bar No. 141275
Admitted Pro Hac Vice